

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AS/LKG
F. #2015R01691

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 10, 2019

<u>By ECF, Email and Hand Delivery</u>

The Honorable Carol B. Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

   Re: <u>United States v. Scott Brettschneider,</u>
     <u>Criminal Docket No. 18-123 (S-1) (CBA)</u>

Dear Judge Amon:

  The government respectfully submits this letter in advance of the final pretrial conference, scheduled for Tuesday, March 12, 2019, at 11:00 a.m. (the "Conference").  To aid our discussion at the Conference, we outline the issues we anticipate raising and provide the governing law.  In short, the government respectfully requests, that the Court:

- Require the defendant to identify, at or before the Conference, any calls or clips of calls he intends to introduce at trial;

- Require the defendant to object to any of the government's marked exhibits;[1]

- Permit the government to introduce the wiretap evidence through two witnesses, even though only one is required under Rule 901;

- Put the defendant on notice that attacks on the integrity of the investigation may allow the government to explain the scope of the investigation; and

- Permit the government to introduce certain documents from Richard Marshalls' underlying case and require the defendant to identify any other documents he seeks to admit.

---

[1] The defendant could still object to the admission of these exhibits at trial if he believes the government has failed to lay a proper foundation.

I. <u>Defense Exhibits and the Rule of Completeness</u>

    A. <u>The Government Has Produced Its Exhibits Ahead of Schedule</u>

The vast majority of government exhibits in this trial will consist of clips of wiretap calls during which the defendant Scott Brettschneider or his co-conspirators (or both) discussed their scheme to submit a fraudulent letter to the Bureau of Prisons (the "BOP"). At the last conference, the Court ordered the government to produce, by Friday, March 8, 2019, transcripts of all the clips it intends to introduce at trial. The Court also instructed the defendant to inform the Court at the Conference what additional clips or calls he believed were admissible under the doctrine of completeness. <u>See</u> Fed. R. Evid. 106.

To allow the defendant additional time to decide whether he would offer exhibits at trial, the government complied with the Court's order ahead of the March 8 deadline, producing the transcripts to the defense on Tuesday, March 5.[2] The defendant has not informed the government what, if any, clips (or other exhibits) he intends to introduce at trial. The government respectfully requests that the Court reaffirm its order, requiring the defendant to make this disclosure at the Conference, and that it rule on the admissibility of the defendant's proposed exhibits. Particularly in light of the government's early disclosure, the defendant should also not be permitted to introduce any calls or clips at trial that he fails to identify at the Conference. The defendant has known the government's case for months, and now knows it down to its every exhibit.

For the same reasons, the defendant should raise any objections (other than foundation) he has to the handful of documents the government has also marked as exhibits. Doing so in advance of trial will allow the Court to resolve any disputes without unnecessary sidebars.

    B. <u>Additional Calls Are Likely Inadmissible</u>

The government is skeptical that clips from calls other than those the government has identified could be admissible under Rule 106. "Under the rule of completeness, 'even though a statement may be hearsay, an omitted portion of the statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" <u>United States v. Fawwaz</u>, 691 F. App'x. 676, 678 (2d Cir. June 2, 2017)

---

[2] The government also sent to the defendant, via overnight mail, the corresponding audio clips, as well as the bulk of the government's other exhibits. Then, on March 8th, the government informed the defendant that it would no longer introduce two calls, that it shortened two other clips, that it made minor edits to the transcripts, that it re-numbered a few exhibits to account for the business records certifications produced to the defendant which the government will introduce at trial pursuant to Federal Rule of Evidence 902(11), and that it added a few exhibits. The government emailed the materials to the defendant the same day. The government also sent a hardcopy of the exhibits to the Court's chambers on March 8th. The Court's copy reflects all of these changes.

(quoting United States v. Johnson, 507 F.3d 793, 796 (2d Cir. 2007)). The rule "does not . . . require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." United States v. Gupta, 747 F.3d 111, 139 (2d Cir. 2014) (citations omitted).

The Second Circuit has endorsed a strict application of Rule 106, thus, for example, concluding that a defendant could not introduce a portion of his confession relating "to the *execution* of [a] robbery," where the portion introduced by the government concerned only "*plans* to execute the robbery." Johnson, 507 F.3d at 796 (emphases in original). See also Fawwaz, 691 F. App'x at 678 (finding no Rule 106 error where the admitted portions of the transcript addressed state of mind while the excluded portions involved a discussion of the defendant's response to a document he received). The burden rests with the defendant to demonstrate that the portions of the statement he seeks to offer are necessary to clarify or explain the portions the government intends to offer. See United States v. Glover, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent."). "The trial court's application of the rule of completeness is reviewed for abuse of discretion." Johnson, 507 F.3d at 796.

The defendant has noted his intention to potentially introduce entirely separate calls—not just additional clips from admitted calls—because some might be "relevant." Relevance, however, is not the standard for inadmissible hearsay. "The rule of completeness ensures only that a party does not introduce misleading evidence." Watson v. Geren, 587 F.3d 156, 175 n.20 (2d Cir. 2009) (en banc) (Raggi, J., dissenting). See also United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible."). The question is whether the clips introduced by the government would be misleading or difficult to understand in isolation.

Because it is so rare for the meaning of one telephone call to be distorted by the exclusion of an entirely separate call, courts have routinely denied defendants' requests to admit separate calls under Rule 106. See, e.g., United States v. Meraz, 663 F. App'x 580, 581-82 (9th Cir. 2016) (affirming exclusion of additional telephone calls because the government's excerpts "were not misleading"); United States v. Chiles, 185 F. App'x 301, 305 (4th Cir. 2006) (same, where the admitted call was "clear" and the "jury did not need to review [the other call] in order to understand the [admitted call]"). Cf. United States v. Johnson, 579 F. App'x 867, 870 (11th Cir. 2014) (affirming exclusion of additional excerpts of calls because the government's portions were not "misleading or destroyed in isolation").[3]

The government will reserve judgment until it is notified of the defendant's proposed exhibits, but will likely object to the introduction of additional calls.

---

[3] A defendant may also not insist that calls be played in their entirety, without identifying which omitted portions are necessary to elucidate the admitted ones. See, e.g., United States v. Crawford, 714 F. App'x 27, 33-34 (2d Cir. 2017) (observing that the District Court invited the defendant "to identify other passages he wanted played at trial, but he declined to do so, insisting that the tapes must be played in their entirety").

3

II.      <u>Admission of Wiretap Evidence</u>

To streamline what should be a two- or three-day trial and to address the defendant's concerns expressed in discovery, the government took the unusual step of making a prospective witness available to the defendant to extensively question the witness (without limitation) about the mechanics and specifics of the wiretap in this case. At the last conference, however, counsel informed the Court that the defendant had no intention of stipulating to this evidence and would challenge its introduction on foundation grounds. In a renewed effort to avoid sidebars at trial, the government summarizes its plan to introduce the wiretap calls marked as government exhibits and explains why any objection on foundation grounds would be meritless.

A.      <u>The Standard For Laying a Foundation Is "Not Particularly High"</u>

In order to establish an exhibit's authenticity, the government must "produce sufficient evidence to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). That standard is met where "sufficient proof has been introduced so that a reasonable jury could find in favor of authenticity or identification." <u>United States v. Tin Yat Chin</u>, 371 F.3d 31, 38 (2d Cir. 2004) (internal quotation marks omitted). The standard is "not particularly high." <u>United States v. Bout</u>, 651 F. App'x 62, 64 (2d Cir. 2016) (summary order) (internal quotation marks omitted).

Rule 901 "does not definitively establish the nature or quantum of proof that is required" to authenticate an item of evidence. <u>United States v. Sliker</u>, 751 F.2d 477, 499 (2d Cir. 1984); accord <u>United States v. Vayner</u>, 769 F.3d 125, 130 (2d Cir. 2014). "[P]roof of authentication may be direct or circumstantial." <u>United States v. Al-Moayad</u>, 545 F.3d 139, 172 (2d Cir. 2008). Such proof may include testimony by a "witness with knowledge" that "a matter is what it is claimed to be." <u>United States v. Rommey</u>, 506 F.3d 108, 138 (2d Cir. 2007). But "a document can be authenticated by distinctive characteristics of the document itself, such as its appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with the circumstances." <u>Vayner</u>, 769 F. 3d at 130 (internal quotation marks and alterations omitted).

Proving a "chain of custody will [also] suffice to authenticate physical evidence, and the chain of custody need not be free of defects. . . . Alleged breaks in the chain typically do not bear upon the admissibility of evidence, only the weight of the evidence." <u>Bout</u>, 651 F. App'x at 64 (internal quotation marks omitted). "The burden of authentication does not require the proponent of the evidence to rule out all possibilities inconsistent with authenticity, or to prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood." <u>United States v. Pluta</u>, 176 F.3d 43 (2d Cir. 1999) (quoting <u>United States v. Holmquist</u>, 36 F.3d 154, 168 (1st Cir. 1994)). And "after the proponent of the evidence has adduced sufficient evidence to support a finding that the proffered evidence is what it is claimed to be, the opposing party 'remains free to challenge the reliability of the evidence, to minimize its importance, or to argue alternative interpretations of its meaning, but these and similar other challenges go to the weight of the

4

evidence—not to its admissibility.'" Vayner, 769 F.3d at 131 (quoting Tin Yat Chin, 371 F.3d at 38) (emphasis in original).

Put simply, imperfect chain of custody and "theoretical musings are not sufficient to warrant exclusion of" evidence, including recordings. United States v. Ida, 96-CR-430 (LAK), 1997 U.S. Dist. LEXIS 2997, at *7 (S.D.N.Y. Mar. 17, 1997); see id. at *8 ("The defendants' contentions concerning chain of custody, the quality of Agent Kelleher's testimony, and so on go to the weight, rather than admissibility, of this evidence. . ." (internal citation marks omitted)).

B. Courts Have Permitted Introduction of Wiretap Evidence Through a Single Summary Witness

In ruling on the admissibility of wiretap evidence, courts in this Circuit have not elevated the low bar set by Rule 901. For example, in United States v. Bosch, 399 F. Supp. 2d 521, 523 (S.D.N.Y. 2005), in a pre-trial order, Judge Marrero permitted the introduction of intercepted communication "through a single summary witness"—one of the case agents involved in the investigation. The court noted that the standard for admitting recordings is simply to "produce clear and convincing evidence of authenticity and accuracy." Id. at 522 (quoting United States v. Fuentes, 563 F.2d 527, 532 (2d Cir. 1977)).

Other examples abound. In United States v. Miranda, 93-CR-0108 (KTD), 1993 U.S. Dist. LEXIS 14439, at *11 (S.D.N.Y. Oct. 8, 1993), Judge Duffy, also in a pre-trial ruling, allowed the government to introduce intercepted communication through testimony of a case agent (along with a paralegal who helped prepare the physical tape for trial). And in United States v. Viola, 91-CR 800 (S-4) (SJ), 1992 U.S. Dist. LEXIS 15625, at *11 (E.D.N.Y. Oct. 7, 1992), the court ruled that the government would be permitted to introduce wiretap evidence through an agent who planned to "testify to the routine procedures employed to intercept conversations and then to safeguard their authenticity." See also United States v. Haire, 806 F.3d 991, 996 (8th Cir. 2015) (affirming district court's decision to introduce wiretap communication through a case agent, noting "the absence of any evidence indicating that the recordings were not authentic"); United States v. Cortellesso, 663 F.2d 361, 364 (1st Cir. 1981) (a single agent's testimony about the intercepted communication was "more than enough to raise the presumption of official regularity" (internal quotation marks omitted)).

Even absent stipulations, courts in this district have routinely accepted case agent testimony alone to authenticate wiretap evidence, see, e.g., United States v. Krivoi, 18-CR-100 (ENV) (introduced through a single FBI case agent); United States v. Gershman et al., 16-CR-553 (S-4) (BMC) (introduced through a single DEA case agent); United States v. Bachu, 16-CR-555 (LDH) (introduced through a single FBI case agent); United States v. Gigliotti et al., 15-CR-204 (RJD) (same); United States v. Sampson, 13-CR-269 (DLI) (same), including in at least one case before this Court, see United States v. Gill et al., 13-CR-487 (CBA) (introduced through a single FBI case agent).

5

      C.      The Government Will Exceed the Requirements

Although case law and practice in this district make clear that a summary witness could alone properly authenticate wiretap evidence, given the defendant's insistence for additional evidence, the government will introduce intercepted communication through two witnesses: (1) a New York City Police Department ("NYPD") detective assigned to the NYPD's Technical Assistance Response Unit, the unit responsible for the technical implementation of the wiretap order in this investigation, and (2) the lead investigator employed by the Queens County District Attorney's Office ("QCDA"), who also monitored some of the communication intercepted on Gallman's cell phone. The first witness will explain the technical side of how the order is implemented, and why monitors could not have tampered with the evidence. The second witness will explain the process of obtaining the wiretap order, the actual monitoring of the communication during this investigation, and whether the disk of the selected clips of intercepted calls contains the intercepted communication obtained pursuant to the court order. The government submits that this is more than sufficient to lay the foundation for the admission of the wiretap evidence.

III.    Cross-Examination About Integrity of the Investigation

The defendant has indicated that he may challenge the integrity of the investigation. A challenge of the investigation, however, would necessarily require the jury to understand the investigation, which focused not on the RDAP fraud but on witness-tampering schemes involving Gallman and criminal defense attorneys.

On direct examination, the government intends to use leading questions to confirm with the QCDA investigator that the QCDA and the NYPD were investigating a different crime when they incidentally intercepted the RDAP fraud. The government does not intend to elicit information about the offense targeted by QCDA, the genesis of the investigation or what it uncovered. But to the extent counsel suggests, either through cross-examination or argument, that the investigation was only about the RDAP fraud, or makes arguments about, for example, wasted resources or poor minimization, then the government would seek to introduce evidence showing that the focus of the investigation was a more serious and wide-ranging crime that directly impacted significant criminal cases in Queens County (and elsewhere), and that those conversations—between Gallman and criminal defense attorneys, including the defendant—were of an entirely different sort.

Allowing the government leeway on redirect or in a rebuttal case would correct any misimpressions created about why, for example, the QCDA invested resources in a long-term wiretap investigation, why it did not focus its attention on the RDAP fraud, or why minimization during calls about RDAP fraud was not as consistent as the minimization about routine conversations Gallman had during the six-month wiretap period about obtaining false testimony.[4] See, e.g., United States v. Vasquez, 267 F.3d 79, 84-85 (2d Cir. 2001) (affirming district court's decision to allow the government, on re-direct, to introduce evidence of defendant's reputation in response to cross-examination, and observing that, "The scope of

---

[4] A motion made by co-defendant John Scarpa already required the Court to review some of these calls—a review that the Court recognized revealed largely consistent and appropriate minimization.

6

redirect examination is a matter entrusted to a trial judge's broad discretion. Such redirect may be used to rebut false impressions arising from cross-examination and the trial judge is in the best position to determine whether such a false impression was created." (internal quotation marks omitted)); United States v. Silver, 184 F. Supp. 3d 33, 53 n.10 (S.D.N.Y. 2016) ("[O]therwise inadmissible evidence is admissible to rebut a false impression created by the opposing party's evidence, whether the opposing party's evidence was properly admissible or not."), rev'd on other ground, 864 F.3d 102, 105 (2d Cir. 2017).

The government respectfully submits that setting ground rules for what lines of cross-examination or argument would open the door, would prevent unnecessary sidebars at trial.

IV. Admission of Richard Marshall's Underlying Court Documents

Among the exhibits the government has marked for identification to the defense are the following documents from the federal case United States v. Wright et al., 12-CR-014 (N.D.N.Y) (FJS), in which the defendant represented co-conspirator Richard Marshall, the inmate who sought admission into RDAP:

- Marshall's Presentence Investigation Report (which disclosed no ongoing substance abuse);

- The defendant's sentencing letter on behalf of Marshall;

- An expert report addressed to the defendant and submitted by the defendant on behalf of Marshall; and

- The defendant's Notice of Appearance.

The defendant has not objected to the admission of these documents. The government respectfully requests that to the extent the defendant objects to them in their entirety or to any portions, that he do so at the Conference. In addition, if the defendant intends to introduce any other documents from Wright, the government requests that he make that known before or at the

7

Conference, so that the government can make appropriate applications to the Court without disrupting trial.[5]

                                                Respectfully submitted,

                                                RICHARD P. DONOGHUE
                                                United States Attorney

By:             /s/             
                                                Lindsay K. Gerdes
                                                Andrey Spektor
                                                Assistant United States Attorneys
                                                (718) 254-6155/6475

cc:  Sarita Kedia, Esq. (by ECF)
      Jonathan Savella, Esq. (by ECF)
      Clerk of the Court (CBA) (by ECF)

---

[5] In addition to the underlying documents in <u>Wright</u>—which have been produced to the defendant in discovery—the government is aware that the Probation Department in the Northern District of New York made a recommendation about Marshall's drug treatment in prison. The written recommendation is confidential and was, according to the Probation Department, never produced to the government in that case, Marshall or the defendant. The Chief Judge of the North District has not authorized its disclosure, except that Marshall's probation officer will be permitted to bring it with her to court when she testifies, to satisfy the government's obligations under the Jencks Act.