UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA

                                                                                              18 CR 123 (CBA)

    -against-


SCOTT BRETTSCHNEIDER, et al.,

                *Defendants.*

-------------------------------------------------------X


# MEMORANDUM OF LAW IN SUPPORT OF
# SCOTT BRETTSCHNEIDER'S RULE 29 & RULE 33 MOTION


                                                  Sarita Kedia
                                                  Sarita Kedia Law Offices, P.C.
                                                  5 East 22nd Street, Suite 7B
                                                  New York, New York 10010
                                                  (212) 681-0202
                                                  skedia@kedialaw.com

                                                  *Attorney for Scott Brettschneider*

# **TABLE OF CONTENTS**

STATEMENT ........................................................................................................................ 1

PROCEDURAL HISTORY ................................................................................................. 1

LEGAL STANDARD ........................................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ......................................................................................................................... 6

I.   BRETTSCHNEIDER'S CONVICTIONS FOUNDER ON THE
     MATERIALITY REQUIREMENT ........................................................................ 6

  A.   THE GOVERNMENT FAILED TO PROVE THE MATERIALITY OF
       SHABAZZ'S MISSTATEMENTS ..................................................................... 7

  B.   IN THE ABSENCE OF A MATERIAL MISSTATEMENT,
       BRETTSCHNEIDER'S CONVICTIONS MUST FALL ................................ 10

II.  ALTERNATIVELY, THE COURT SHOULD  ORDER A NEW TRIAL IN
     THE INTEREST OF JUSTICE ............................................................................ 11

CONCLUSION ................................................................................................................... 12

## STATEMENT

Defendant Scott Brettschneider submits this memorandum in support of his motion under Rule 29 and Rule 33 of the Federal Rules of Criminal Procedure.

## PROCEDURAL HISTORY

In April of this year, Mr. Brettschneider stood trial on an indictment that charged him with making a false statement (18 U.S.C. § 1001(a)(2)) and conspiring to make a false statement (18 U.S.C. § 371). S1 Indictment, ECF No. 74, ¶¶ 1-3. He moved for a judgment of acquittal at the conclusion of the government's case-in-chief and renewed the motion upon the close of evidence. Tr. 680-83, 734. The Court denied the motion "without prejudice to [further briefing]" on the sufficiency of the evidence. Tr. 735. On April 5, the jury convicted Mr. Brettschneider on both counts.

## LEGAL STANDARD

Rule 29 provides that, on a defendant's motion, the Court "must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). The rule "imposes a heavy burden on the defendant, whose conviction must be affirmed 'if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

In passing on the sufficiency of the government's proof, a court must view the evidence in the light most favorable to the verdict, "crediting every [reasonable] inference the jury may have drawn in favor of the government." *United States v. Eppolito*,

543 F.3d 25, 45 (2d Cir. 2008). The court may not, however, embrace "specious inferences;" nor may it permit a conviction to stand upon the constitutionally infirm basis "that the defendant is probably guilty." *United States v. Lorenzo*, 534 F.3d 153, 159 (2d Cir. 2008) (internal quotation marks and citations omitted).

## FACTUAL BACKGROUND

The Indictment's substantive and conspiracy counts arose from a single set of facts. According to the prosecution, Brettschneider, a criminal defense attorney, had assisted the "effort[s]" of a federal inmate and former client named Richard Marshall to "fraudulently gain[]" admission into the BOP's "Residential Drug Abuse Program ("RDAP")." Indictment ¶ 1.

The crux of the government's case was a November 2014 letter from Reginald Shabazz-Muhammad ("Shabazz") to the "[R]DAP coordinator" at Marshall's prison facility. Tr. 46, 49. "[A] licensed substance abuse counselor" who occasionally moonlighted as a paralegal in Brettschneider's office, Shabazz informed the BOP official that Marshall had been "enrolled" in a drug and alcohol treatment program at the "Mohammad Mosque No.7" from "October 2003 thru [sic] January 2010." GX 2b. During that period, Shabazz claimed, the volunteers who conducted the program

> assessed and clinically determined that Mr. Marshall was suffering from active drug dependence, namely alcohol and marijuana. By his own admission[,] his active drug dependence had impaired his judgment and functioning causing him to experience progressive negative consequences in his life. To alleviate his condition[,] Mr. Marshall recognized he needed the help and support of drug treatment intervention services.

2

*Id.*

The government demonstrated that the information in Shabazz's letter contradicted Marshall's own representations to the probation officer who had prepared the September 2013 presentence report in his underlying drug case. According to the probation officer, Marshall had "denied a[] history of excessive alcohol use" and disclaimed any "marijuana . . . use in the past ten years." *See* GX 15 at ¶ 95. The officer went on to note that Marshall's last brush with drug treatment had come in the late 1980s, when the parole board ordered him to attend an "outpatient" program in Queens. GX 15 at ¶ 96; *see also id.* at ¶ 85 (noting that Marshall's last stint on parole had ended in July 1989).

Although Marshall's claim to abstinence was likely false – a knowledgeable colleague of Brettschneider testified that Marshall had been a habitual alcohol and marijuana user (*see* Tr. 692-93) – there was no reason to doubt the accuracy of the presentence reports' statements concerning Marshall's drug treatment history.

The evidence tying Brettschneider to Shabazz's letter came through conversations captured on a wiretap that state investigators had obtained in an unrelated investigation. Marshall was first intercepted discussing a plan to finagle his way into RDAP with the wiretap investigation's target, Charles Gallman, in mid-October 2014. By the end of that month, the pair were in contact with Brettschneider, who had been Marshall's attorney in the underlying drug case. A series of conversations between

3

Brettschneider, Marshall and Gallman between late October and early December 2014 established the following sequence of events:

- Marshall asked Brettschneider to help him find a drug treatment provider who was willing to inform the BOP that Marshall had participated in a "program" during the "year . . . prior to [his] arrest" in February 2012. GX 21-t 6:16-23

- Brettschneider referred Marshall's request to Shabazz who, on November 20, 2014, dispatched his letter. GX 22-t; GX 23-t.

- Upon receiving a copy of Shabazz's letter, a frustrated Marshall reported back to Brettschneider that the missive was useless because it failed to make representations concerning his treatment in "2011." GX 30-t 5:30-36.

- Brettschneider and Shabazz subsequently refused Marshall's repeated requests for "notes" from fictional treatment sessions with Marshall in 2011. *Id.* at 4:21-5:34.

Testimony and documentary evidence concerning the RDAP admission policies, together with records from Marshall's incarceration, placed the wiretap recordings into context. Prosecution witness Kit Hoffman, BOP "Psychology Treatment Programs Coordinator for the Northeast Region" (Tr. 29), explained that inmates who apply for admission to RDAP undergo a two-step admission process, consisting of an "initial screening" followed by a "clinical interview [with]" their facility's "RDAP coordinator." Tr. 36. The eligibility standards for the program are "strict" and inflexible: among other things, there must be "document[ed]" proof of the inmate's substance abuse during the "*12 months prior to* [his] *arrest.*" Tr. 37 (emphasis supplied); *see id.* (Hoffman explains that

4

the 12-month rule reflects the DSM-V's judgment that "if there's been no substance use for 12 months then the substance use disorder is [] in remission").

Hoffman identified two avenues for satisfying the 12-month requirement. For most RDAP-eligible inmates, the PSR supplied the requisite evidence of pre-arrest substance abuse. Tr. 37. Inmates with inadequate PSRs could still gain admission to RDAP, but they faced bureaucratic hurdles. To establish RDAP eligibility through sources "outside" the PSR, Hoffman explained, the BOP needed "documentation" on the inmate's substance abuse *during* "the year prior to the [his] arrest." Tr. 38.

BOP regulations corroborated Hoffman's account. According to the relevant "Program Statement" (Tr. 62), the "collateral" evidence that an inmate may present to establish his RDAP eligibility includes:

- Documentation to support a substance use disorder *within the 12-month period before the inmate's arrest* on his or her current offense.

- Documentation from a probation officer, parole officer, social service professional, etc., who has information that verifies the inmate's problem with substance(s) *within the 12-month period before the inmate's arrest* on his or her current offense.

- Documentation from a substance abuse treatment provider or medical provider who diagnosed and treated the inmate for a substance abuse disorder *within the 12-month period before the inmate's arrest* on his or her current offense.

- Multiple convictions (two or more) for Driving Under the Influence (DUI) or Driving While Intoxicated (DWI) in the 5 years prior to his or her most recent arrest.

BOP Program Statement No. P5330.11 at ch. 2, p. 12 (emphasis supplied).[1]

The 12-month rule had, the jury learned, stymied Marshall's RDAP application. Citing the information in Marshall's PSR, BOP officials had ruled him RDAP-ineligible at the conclusion of his initial screening on October 3, 2014. GX 4 at p.4-5. Shabazz's letter – which was examined sometime in early December – did not alter the initial determination. On December 10, 2014, the letter was dropped into Marshall's file with a terse "Administrative Note" that read:

> Document received that did not meet criteria of one year before his arrest, 2/12. Document not acceptable.

GX 4 at p. 2.

## ARGUMENT

## POINT I

### BRETTSCHNEIDER'S CONVICTIONS FOUNDER ON THE MATERIALITY REQUIREMENT

In order to secure a § 1001(a)(2) conviction, the Government must prove, *inter alia*, that the defendant intentionally made, or caused someone else to make, a "*materially* false, fictitious, or fraudulent statement" to a government agency. *United States v. Coplan*, 703 F.3d 46, 78 (2d Cir. 2012) (emphasis supplied). A statement is material if it has "a natural tendency to influence, or [be] capable of influencing, the decision of the

---

[1] Relevant pages from the Program Statement, which was admitted into evidence as "Defense Exhibit A" at trial (Tr. 62), are appended to this Memorandum as an Attachment.

6

decision-making body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995) (quoting *Kungys v. United States*, 485 U.S. 759, 770 (1988)). The government fell well short of meeting its burden in this case.

### A. THE GOVERNMENT FAILED TO PROVE THE MATERIALITY OF SHABAZZ'S MISSTATEMENTS

Ascertaining the materiality of a statement entails "the determination of at least two subsidiary questions of purely historical fact: (a) 'what statement was made?' and (b) 'what decision was the agency trying to make?'" *Gaudin*, 515 U.S. at 509. The answers to these preliminary inquiries frame "the ultimate question[:] . . . whether the statement was material to the decision." *Id.*

The analysis is relatively straightforward in this case. The relevant statement, contained in Shabazz's November 2014 letter, was the claim that Marshall had received treatment for "active [] dependence[ on] alcohol and marijuana" from "October 2003 thru [sic] January 2010." Tr. 276. The "decision," *Gaudin*, 515 U.S. at 509, was whether Marshall suffered from a "substance abuse problem in the year prior to his [February 2012] arrest." Tr. 52, 67. If so, the October 3, 2014, determination of Marshall's RDAP-ineligibility would be reversed. *See* Tr. 54. If not, that determination would stand. *Id.*

The determination stood. Tr. 55. As Marshall learned in early December 2014, Shabazz's letter was, for all intents and purposes, a nullity. For one thing, the missive's date – "November 6, 2014" (Tr. 72) – meant it was not created during the "12-month period before the inmate's arrest." BOP Program Statement No. P5330.11 at ch. 2, p.

7

12; *see* Tr. 66 (Dr. Hoffman confirms that "treatment records" offered to establish RDAP eligibility must be contemporaneous). In addition, Shabazz's assertion of an "active [drug] dependence" extended only through "January 2010," once again missing the crucial 12-month period by over a year. Tr. 67.

These shortcomings made Marshall's application a nonstarter; he simply "could not" be admitted into the program on the strength of Shabazz's representations. *Id.* Far from "influencing" the BOP, then, the letter's "natural tendency" was to sink into the bureaucratic oblivion of Marshall's file. *Gaudin*, 515 U.S. at 509.

The government proffered two justifications for hauling the document back into the light of day. First, it argued that Shabazz's letter was "something" that BOP officials could have "taken into consideration" in determining Marshall's RDAP eligibility. Tr. 681-82. Barring that, the government hazarded that the letter would at least "distract[]" BOP officials from their "duties." Tr. 681. Neither of these rationales has the slightest bearing on the question of materiality.

The government's first argument mixes conjecture with equivocation in equal parts. Hoffman contributed the first ingredient when he opined that a BOP official "*could* consider" the Shabazz letter as "corroborative" of "some [other] documentation that was done *at the time*" of the asserted diagnosis. Tr. 69 (emphasis supplied). In other words, Shabazz's letter *may have mattered* if it were accompanied by valid, contemporaneous proof that Marshall had abused drugs or alcohol during the year prior to his arrest. True or not, discourses on "purely theoretical" decisions or "metaphysical

8

possibilit[ies]" do not establish the "capability to influence" that is the sine qua non of materiality. *United States v. Litvak*, 808 F.3d 160, 173 (2d Cir. 2015). The prosecution's burden demanded "evidence of an actual decision" – not a hypothetical one – "that was reasonably capable of being influenced by [Shabazz's] misstatements." *Id.* at 172. (emphasis deleted).

The government's second argument draws a false equivalency between consideration and influence. The fallacy lies in the distinction between facts that "may have be[come] *relevant*" and the facts that were "capable of influencing" the "actual decision" before the government agency. *Id.* at 172, 174. In this case, the latter were set out in BOP Program Statement No. P5330.11. Whether a BOP official considered Shabazz's letter or not, the regulations precluded it from impacting Marshall's RDAP eligibility. *See* Tr. 72 (Hoffman acknowledges that an RDAP coordinator's "discretion" could only be exercised within "the confines of the program statement regulations"). Shabazz's assertions were, therefore, immaterial.

The prosecutors' second argument – that the letter "distracted" BOP officials – simply misreads the case law on materiality. The confusion centers on Second Circuit decisions that have affirmed the "materiality" of false statements on the basis that they were "'capable of distracting *government investigators'* attention away from' a critical matter." *United States v. Adekanbi*, 675 F.3d 178, 182 (2d Cir. 2012) (quoting *United States v. Stewart*, 433 F.3d 273, 318 (2d Cir. 2006)) (emphasis supplied). Contrary to the government's surmise, these cases do not expand the definition of materiality to include

9

misstatements that may have been "distracting" in the colloquial sense. They simply articulated how *Gaudin*'s formulation applies to government agencies tasked with making decisions concerning *what* (or *whom*) to investigate. Where such agencies are concerned, misstatements calculated to alter the course of an investigation have "a natural tendency to influence, or [be] capable of influencing, the decision of the [government] decisionmaking body to which [they are] addressed." *United States v. Carrasquillo*, 239 F. App'x 634, 635 (2d Cir. 2007) (*quoting Gaudin*, 515 U.S. at 509).

*Gaudin*, then, supplies the rule of decision in this case. In the absence of a misstatement "capable of influencing" Marshall's RDAP eligibility, the government failed to prove materiality. *Id.*

**B.   IN THE ABSENCE OF A MATERIAL MISSTATEMENT, BRETTSCHNEIDER'S CONVICTIONS MUST FALL**

The government's failure to establish materiality topples both of Brettschneider's convictions. Because materiality constitutes "an essential element" of a "section 1001" offense, *United States v. Ballistrea*, 101 F.3d 827, 835 (2d Cir. 1996), Brettschneider's conviction on Count Two is a dead letter. *See Litvak*, 808 F.3d at 172-73 (tossing out a § 1001 conviction on the basis of the prosecution's feeble materiality showing). The conspiracy conviction is also fatally compromised because the government relied upon the supposed materiality of Shabazz's statements to establish that Brettschneider "willfully joined and participated" in the "submission of a *materially* false . . . letter to the [BOP]." Tr. 874; *see* Tr. 741 (government in summation urges the jury to infer

10

Brettschneider's intent from Shabazz's assertions, arguing "that [the] whole point" of the letter was to "influence the BOP's [RDAP] decision"); *cf. United States v. Hanlon*, 548 F.2d 1096, 1101 (2d Cir. 1977) (observing that the state of mind necessary to prove conspiracy is generally established according to the "'old adage [that a]ctions speak louder than words'").

## POINT II

## ALTERNATIVELY, THE COURT SHOULD ORDER A NEW TRIAL IN THE INTEREST OF JUSTICE

Unlike Rule 29, which contemplates relief from a verdict only in the absence of "competent, satisfactory and sufficient evidence," Rule 33 invests the Court with "broad discretion" to order a new trial when, after an "objective evaluation" of "all facts and circumstances," it is convinced that "letting a guilty verdict stand would be a manifest injustice." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks omitted); *see United States v. Davidson*, 308 F. Supp. 2d 461, 465 (S.D.N.Y. 2004) (McMahon, J.) ("When considering a new trial motion under Rule 33 of the Federal Rules of Criminal Procedure, the Court sits as a proverbial thirteenth juror, and may consider the evidence in whatever light seems most persuasive to it— which may or may not be most favorable to the Government."). To the extent the Court concludes that the government made a marginally sufficient showing of materiality – or that Brettschneider's conspiracy conviction may stand even in the absence of a

11

materiality showing – this Court should "vacate [the] judgment and grant a new trial in the interest of justice." Fed. R. Crim. P. 33(a).

## **CONCLUSION**

For the reasons set forth above, the Court should grant Brettschneider's motion, set aside the verdict and enter a judgment acquitting Brettschneider on all counts.

Dated:   New York, New York
         May 15, 2019

         Respectfully submitted,

         /s/

Sarita Kedia
Sarita Kedia Law Offices, P.C.
5 East 22nd Street, Suite 7B
New York, New York 10010
(212) 681-0202
skedia@kedialaw.com

*Attorney for Scott Brettschneider*

On the brief:

    Sarita Kedia, Esq.
    Jonathan Savella, Esq.