# PATRICK J. JOYCE, ESQ.

Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:
658 Ridgewood Road
Maplewood, NJ 07040
(973) 324-9417

July 12, 2019

**By Hand**
Honorable Carol B. Amon
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: <u>United States v. Scott Brettschneider</u>,
     18 CR 123 (CBA)

Your Honor,

It is the end of a long trial, and the judge is reading the charge on the law to the jury. There is a seat in the middle of the room, in perfect view of the jury. The man in that seat is an attorney who has been practicing law for nearly four decades. He has tried cases up and down the Eastern Seaboard from north to south. But he has always sat in a different seat, never before has he sat in the chair reserved for the defendant. This time listening to the charge is different because, this time, it is his fate on the line, his freedom on the line, his family's future is in the hands of the jury. Unlike all the other times when he, as a trial lawyer, could relax for the first time in weeks because he knew exactly what the Court would say, he is the most nervous he has been during the pendency of this case. He has sat through the testimony and listened as witness after witness described the evidence in this case and he knows that his criminal intent is what is in question.   Throughout his career and for that matter his life he has always stepped up and taken responsibilities for his actions and the problems life throws at you. But this case is different because in this case he is still not quite sure what he did wrong.  Just last night he sat in his room and wondered to himself how did he get here? What led to him sitting in court on trial, facing serious charges with serious consequences, failing in health, and worried

Honorable Carol B. Amon
July 12, 2019
Page 2 of 24

about the good and welfare of his family if the worst case scenario occurs. The words of the judge fade out and he is left thinking what led him to this point? He understands that this trial is no different than any other trial and it entails the risk that a jury might vote for conviction. Did he trust the wrong people? Surely. Should he have been more concerned about what others were doing in this particular case? Yes. He grows increasingly more nervous, he tries not to let on so as not show the jury his nervousness but he realizes he could lose, the jury could find him guilty. Not that for one minute does he believe he violated his oath both to the Court and to his clients but he realizes that despite that based on the evidence he could lose. The jury leaves the courtroom and begins its deliberations. And, then the unthinkable happens the jury finds him guilty. At that moment the man who has sat through countless verdicts realizes the difference of being the defense lawyer and being the client. His lawyer whispers the usual words of consolation, but he is not really hearing them. He is overcome with emotion. He knows his life is ruined. He will never practice law again. He knows his lifetime building a reputation as a good, solid, hard fighting, ethical attorney is gone the minute the foreperson read that verdict. And as an officer of the Court and an experienced trial attorney who respects the criminal justice system he respects a jury's verdict and knows full well the consequences that could occur because of it. But all he can think about is his family and what this will mean for their future. Mr. Brettschneider leaves the Courtroom that day almost without knowing what he was doing, his fear for his family's future and well being was almost paralyzing.

Mr. Brettschneider realizes this Court has a very difficult task in deciding what type of sentence to deliver given the myriad of sentencing options the Court has to choose from. Mr. Brettschneider also realizes that because he is an attorney, sworn to uphold the law that any conviction especially one that involves an attempted fraud upon the criminal justice system must be taken quite seriously by the Court because the Court does not want to send a message to the public that such conduct can be condoned or only go lightly punished. This letter and the letters that will follow are an attempt to describe to this Court the type of man Mr. Brettschneider is and the reason that a non-jail sentence given the myriad of sentencing options available to the Court fits Court's mandate to "to impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007).

The Court must decide what sentence is just considering all the factors that bring Mr. Brettschneider before this Court for sentencing. Most sentencing letters at this point turn to a detailed analysis of the Guideline range and what sentence they recommend. Based upon the Total Offense Level of 8, the Sentencing Guidelines place the Defendant in Zone A on the Sentencing Table, rendering him eligible for probation under both the statutes and under the Guidelines. Additionally, he is eligible for home confinement. Accordingly, this Court has full statutory discretion in imposing sentence. While not conceding as accurate the facts contained in the

Honorable Carol B. Amon
July 12, 2019
Page 3 of 24

Pre-Sentence Report, Scott Brettschneider does not object to any of the factual assertions set forth therein and has no objection to the Guidelines analysis conducted by Probation.   The Guidelines themselves in this matter suggest a sentence from 0-6 months (a very low Guideline range) and in most federal cases a defendant would be happy with any sentence the Court might issue within those guidelines.  Yet in this case the importance of the exact number of months that the Guidelines recommend is quite reduced because any amount of incarceration, even one month, could have drastic and even life threatening consequences due to the specific medical situations of not only Mr. Brettschneider, but more importantly to him, to the life of his daughter and wife.  The Guidelines are based on a stark cold calculation of numbers and fail to take into consideration any personal factors of an individual defendant except his prior criminal record.   In this case no plain mathematical calculation can lead this Court to a just sentence due to the myriad of individual, unique and personal factors that this Court must with all due respect consider before coming to a just sentence.  Because the sentence this Court renders could very likely have grave consequences.  This Court as stated has a myriad and broad range of sentencing options open to it and in fact the Department of Probation in their sentencing memorandum recommends a downward departure from the Sentencing Guidelines due to the specific factors of Mr. Brettschneider's situation.

It is oftened asked by philosophers; Does God pray and if God does pray what does God pray for?  Many philosophers have answered these questions by saying that in fact God does pray and when God prays God prays that God's desire to mete out punishment be tempered by God's quality of mercy.  Here based on the following circumstances it is the defenses' respectful request that this Court temper its desire to punish and send a harsh message to the publice with mercy and take into consideration the following factors and devise a sentence that includes a non-jail component.  Mr. Brettschneider understands he is convicted of a very serious crime but at the same time the defense respectfully asks for some mercy.

As set forth in the Pre-Sentence Report, Scott Brettschneider had a normal childhood with good familial relationships.  Of note is that both of his parents and his wife's parents are deceased, and all living relatives live far away from Mr. Brettschneider's home in ███████████   The nearest living relative is Mr. Brettschneider's brother, who resides in ███████, approximately 500 miles away.  This is important because of the medical conditions of Mr. Brettschneider, his wife and most importantly his daughter ████.

Mr. Brettschneider's ██-year-old daughter has a host of rare and complicated medical conditions, which have required treatment in the past at special clinics and hospitals.  Her condition has always been serious and life threatening but like any chronic illness even at the young age of ██ her condition has only worsened with each year that goes by.  ████ Brettschneider conditions include:

Honorable Carol B. Amon
July 12, 2019
Page 4 of 24



a.

b.

c.

d.

e.

f.

g.

Honorable Carol B. Amon
July 12, 2019
Page 5 of 24



h.

i.

j.

k.

l.

m.

n.

o.

p.

q.

As a result

Honorable Carol B. Amon
July 12, 2019
Page 6 of 24



Honorable Carol B. Amon
July 12, 2019
Page 7 of 24



---

[1] This would be highly problematic in a prison setting.

Honorable Carol B. Amon
July 12, 2019
Page 8 of 24



Honorable Carol B. Amon
July 12, 2019
Page 9 of 24

e. ████████████████████████████
████████████████████████

████████████████████████████████████
████████████████████████████████████
████████████████████████████████████
████████████████████████████████████

As the Court can plainly see not only does Mr. Brettschneider ████████
████████████████████████████████ Any incarceration or
imprisonment would pose serious health risks to Scott Brettschneider.  As detailed
above, his medical conditions require significant and constant care to ensure he
stays alive.  Living in an unsanitary environment such as a correctional facility
would pose a serious risk of infection ████████████████████████████████
████████████████████████████████████
████████████████████████ █ ████████████
████████████████████████ Furthermore although officials
from the Bureau of Prisons (BOP) always testify that they can take care of any
medical situation it is highly common that at times this is entirely untrue.  Many
times inmates go days without getting their medication or without seeing the
necessary medical personnel.[2]  This is at its most prevalent during the first few
weeks of incarceration because the BOP does not allow inmates to bring in
medications from the outside upon entering jail and there is almost always a gap
between an inmates arrival in jail and when the BOP begins to administer the
proper medications especially in this circumstance ████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████ Thus, even a short
incarceratory sentence would be life threatening to Mr. Brettschneider.

It is no secret that the quality of medical care provided by the Bureau of Prisons is
not the same level of quality as medical care provided privately.  Provision of
medical care by the BOP is highly variable and often lacking. The use of private
contractors and limited budgets creates incentives for cost cutting that can
undermine the health of people with the same kinds of advanced medical conditions
that Scott Brettschneider has, as the care provided by the Bureau of Prisons is
formulated to cost as little as possible.   Due to these circumstances, it is doubtful

---

[2] One need only remember the horrible situation that occurred in the MDC this past
year.  Mr. Brettschneider in all likelihood would not have survived under those
conditions.

Honorable Carol B. Amon
July 12, 2019
Page 10 of 24

that the Bureau of Prisons would be able to provide the same level, extent, and frequency of care as Scott Brettschneider receives from his various doctors.

Aside from that, even assuming the Bureau of Prisons could directly provide the same level of medical care necessary to keep Scott Brettschneider alive, either directly or through outsourcing, the high cost of such care would be borne by the Government. An expense a non-jail sentence would avoid.

The medical condition of his daughter severely impacts the day-to-day life of the family and any interruption will most definitely have serious consequences for both ███ and ████████████ Critical to the determination of the defendant's sentence, is review of the significance of the impact of incarceration would have on his daughter ███████.

███████████████. Despite his own medical challenges dating back to ████, Mr. Brettschneider has always been and remains an integral figure in ██████ life. It is quite hard for those of us who do not have to take care of a loved one to comprehend the amount of work that is needed to get ████████ through a day. Mr. Brettschneider and his wife are in their sixties ████████████████████████. These facts are not mentioned to garner sympathy from the Court, they are discussed to demonstrate to the Court that removal of Mr. Brettschneider from the family home will have devastating medical and emotional consequences.

The primary reason for the defendant's move to ████████ with his family, was for a better life for ████. Although he has commuted back and forth to New York for 12 years prior to his arrest, he has always been a primary caregiver especially at times when Mrs. Brettschneider is working. As a solo practitioner, Mr. Brettschneider adjusted his work schedule around ████████ care and appointments. A typical week was to travel from ████████ on a Monday or Tuesday, waking up at 3 am, leaving for the airport by 5 am and catching a 6:30 or 7:00 am flight to New York. He would fly back on Thursday night to ████████ to be there on the days that his wife was working. He kept his practice going by sharing associates with other attorney's to cover his cases or hiring independent lawyers on a Per Diem basis. Mr. Brettschneider's presence in the home has

Honorable Carol B. Amon
July 12, 2019
Page 11 of 24

become even more necessary in the past few years as his daughter's condition has severely worsened as she has aged. While ▮▮ sounds young to most people, in



Mr. Brettschneider

Mrs. Brettschneider has been a registered nurse since 1981 and works full time, 12 hours shifts on Fridays, Saturdays and Sundays as a Hospice Nurse. There are caregivers in the home for some part of the day on these days. The reliability of these workers as stated is often poor and there is caregiver burnout from time to time, leaving the family unstaffed. The defendant not only oversees his daughter's care when these aides arrive, but is the back up when they do not show up. Without his support, ▮▮▮ would not be able to go to work and she at this time is the sole source of income.

A typical day in the Brettschneider home starts at 5:30am, when Brettschneider starts preparing

The care given by the Brettschneider's to their daughter does not stop, it is a 24/7

---

[3] Doctor's will say she has survived only due to the loving and constant care she has received from her parents.

situation. ███████████████████████████████████████
███████████████████████████████████████████████████
of Mr. Brettschneider from the home would take a tremendous toll on Mrs.
Brettschneider. As there is no family that has ever been agreeable to taking on the
burden of care for ██████ in the event that either of her parents could no longer
care for her, she would become a ward of the state. ████████ has no siblings to care
for her. ████████████████████████████████████████████
███████████████████████████████████. While in New York,
█████████████████████████████████████████████████████
again when the family moved to ██████████ she attended a ████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████

Finally it should be noted that the Brettschneiders have no family residing near
them to help in the event of an emergency. In the event that ████████ Brettschneider
does not have a parent or a caregiver, she will be placed in temporary custody by
the State.

Additionally, ████████████████████████████████████████
█████████████████████████████████████████████████████
█████████████████████████████████████████████████████

It is due to these unique medical considerations of Mr. Brettschneider and each
member of his family but most importantly his daughter ████████ that the defense
respectfully suggests that the Court issue a non-jail sentence in this matter. The
Court does not even have to depart from the Guidelines even though such a
departure is mentioned in Mr. Brettschneider's PSR by the Probation Department as
the Guidelines without any departure allow for a non-jail sentence.

Mr. Brettschneider would most respectfully request that when this Court considers
all of the factors present in this case that a sentence that includes a non-jail
component serves the ends of justice. Mr. Brettschneider is well aware that he is
asking this Court to grant him a sentence on the lowest end of the Guidelines. The
Guidelines themselves merely rest on a cold calculation of numbers and this is
highly improper in this day and age. Also, the Guidelines fail to take into
consideration the multiple studies that have been done in this area (which will be

Honorable Carol B. Amon
July 12, 2019
Page 13 of 24

discussed later on in this letter) that prove Mr. Brettschneider is at a low risk for recidivism. The worst factor established is the fact that Mr. Brettschneider is convicted of the charged criminal acts. The Guidelines have already taken this into consideration and the defendant's respectful sentence recommendation is within the parameters of the Guidelines. The PSR not only does not state any reason for the Court to impose an incarceratory sentence to the contrary it states that the Court might need to depart downward due to the special considerations in this case that have already been discussed. Yes, the crime he is convicted of is serious but as stated the Guidelines have already considered that. Thus, there must be some additional aggravating factors herein that make a harsher sentence then the minimum necessary. The Probation Department has not pointed to any and there are not. The only factor that can be raised herein that should sway this Court to sentence Mr. Brettschneider on the high end of the Guidelines as opposed to the lower end is that Mr. Brettschneider is an attorney. However, the Guidelines have already taken that into account to a certain degree and the remaining factors in this case most respectfully dictate that this fact alone should not cause this Court to sentence Mr. Brettschneider to jail. Mr. Brettschneider has been a practicing attorney for over 30 years and in that time he has never been accused of any type of improper or unethical conduct. He has always served his clients zealously within the boundaries of the law. Mr. Brettschneider has served honorably as a trial attorney, trying approximately 200 cases to verdict, handling thousands of cases and appeals, and dispensing legal advice to persons in need on a daily basis. He has mentored and developed numerous young attorneys as associates, most of whom have ended up running their own law practices.

Most respectfully there is another reason that this Court in this instance should consider the defendant's respectful request of a non-jail sentence. And that is the effect of the conviction itself will have on Mr. Brettschneider. The ramifications of a defendant receiving a felony conviction are quite numerous. First and foremost Mr. Brettschneider will be disbarred bringing an end to his career as an attorney. And due to his age will in all likelihood bring an end to his ability to support his family. There is no way that Mr. Brettschneider at 63 years old after having spent his entire working career in one distinct area of law can be retrained and earn an income that would be able to support his family. He and his family's financial security has been devastated by this case and it is highly in doubt whether they will be able to recover. Mr. Brettschneider will have to live the rest of his life with the stigma that he is a convicted felon. This conviction will have life long negative effects on his life. In his decision in United States of America v. Chevelle Nesbeth, 15 Cr 18 (FB) Senior District Judge Frederic Block of the Eastern District Court of New York, called into question the lack of consideration judges pay to the ramifications of a felony conviction. The Court stated:

> There is a broad range of collateral consequences that serve no useful
> function other than to further punish criminal defendants after they

Honorable Carol B. Amon
July 12, 2019
Page 14 of 24

> have completed their court imposed sentences. Many, under both
> federal and state law, attach automatically upon a defendant's
> conviction. The effects of these collateral consequences can be
> devastating.
> As Professor Michelle Alexander has explained, "[m]yriad laws, rules,
> and regulations operate to discriminate against ex-offenders and
> effectively prevent their reintegration into the mainstream society
> and economy. These restrictions amount to a form of 'civi[l] death'
> and send the unequivocal message that 'they' are no longer part of 'us.
> "

Decision at pg. 2.  The Court in a lengthy decision points out that there are over
50,000 federal and state statutes that impose penalties, disabilities or disadvantages
on convicted felons. The Court then proceeds to outline in detail some of the
disadvantages that convicted felons suffer. They are rendered ineligible for public
housing, section 8 vouchers, Social Security Act benefits, supplemental nutritional
benefits, student loans, the Hope Scholarship, tax credits, and Legal Services
Corporation representation in public housing eviction proceedings and a myriad of
others.  Thus, even though Mr. Brettschneider is a well-educated man the fact that
he will have to live the rest of his life with a felony conviction will cause him to
continue to suffer the consequences of this conviction long after this Court
sentences him.  Any jail time this Court might be considering will only serve to
amplify the disadvantages he will have to over come.  Thus, it is respectfully
suggested that the Court consider the collateral consequences the defendant will
suffer due to his felony conviction especially the hardship it will cause him in finding
gainful employment.  It is suggested that these consequences and the requested
sentence render a sentence that is sufficient but not greater than necessary to meet
the goals of sentencing.

Title 18 U.S.C. § 3553(a) requires sentencing judges to impose a sentence that is
"sufficient, but not greater than necessary, to comply with" the sentencing purposes
of punishment, deterrence and rehabilitation. In determining the appropriate
sentence, the court must first calculate the applicable sentencing Guideline range
and then consider the relevant § 3553(a) factors, including: (1) the nature and
circumstances of the offense; (2) the history and characteristics of the defendant;
(3) the need for the sentence imposed to reflect the seriousness of the offense,
promote respect for the law, and provide just punishment for the offense; (4) to
afford adequate deterrence to criminal conduct; (5) to protect the public from
further crimes of the defendant; (6) to provide the defendant with needed
rehabilitative or other treatment; and (7) the need to avoid unwarranted disparities
in sentencing. I have addressed the most relevant § 3553(a) factors below.

**1. & 2. Mr. Brettschneider' Background and the Nature and Circumstances of
the Offense Establish That a Non Jail Sentence is Just and Adequate.**

Honorable Carol B. Amon
July 12, 2019
Page 15 of 24

Mr. Brettschneider is a 63-year-old man who was raised in a middle class environment and has practiced law his entire life.  He has worked tirelessly as a professional always maintaining the highest degree of credibility, professionalism and integrity.  Not only his clients, but also the judges he has appeared in front of and the prosecutors who have been his adversaries respect him.  He has also been the consummate family man as already described.  There is nothing in his life story that could lead anyone to state that it was inevitable that Mr. Brettschneider find himself on the wrong side of law.   This situation herein is indeed an anomaly in his life.

The Court having presided over the trial in this matter is fully aware of the facts of this case.  Mr. Brettschneider agrees that the charges herein are quite serious as they entail the corruption of our judicial system.  A system he respects and treasures and has never sought to harm in his over 30 years of practice.  To the contrary he has always sought to honor the system and its rules. Mr. Brettschneider continues to maintain despite his respect for the juries verdict that he did not comprehend what his co-defendants were planning on doing.  He should have been more careful in his conduct and more involved in the situation.  If he had been there is no doubt that Mr. Brettschneider would not be in the situation he now finds himself because Mr. Brettschneider's career proves he is not a dishonest attorney.  He was at fault of not taking charge in this situation and as stated he is suffering and will continue to suffer severe consequences for his lack of attention and action but even those these charges are serious the entire record of Mr. Brettschneider's life and his current living and professional situation most respectfully mean that a non jail sentence is just and adequate.

**3. The Suggested Sentence Will Reflect the Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Protect the Public, and Deter Mr. Brettschneider and Others.**

As stated Mr. Brettschneider understands the seriousness of the offense. He knows what happened is a grave offense not only against the law but also against the justice system specifically and society as a whole.  The sentence he has respectfully asked for is not a slap on the wrist and is a meaningful sentence.  His arrest in this case has already had a major impact on him and will continue to do so for the rest of his life.  Mr. Brettschneider has taken this arrest very seriously and it has caused him to do a lot of soul searching, he knows he made mistakes.  He is truly regretful for it.  Mr. Brettschneider will have to deal with his felony conviction throughout his life because of this one instance.  Adding a prison term to his biography will have no redeeming factor as he has already met the need for rehabilitation and the felony record is adequate punishment.  The only result sentencing him to a prison term will incur is threatening his physical and mental health and more importantly that of his daughter, █████████████████████████████████████████████

Honorable Carol B. Amon
July 12, 2019
Page 16 of 24

████████████████████████████████████████ It will have no societal benefit.

In December, 2017, the United States Sentencing Commission released a report entitled "The Effects of Aging on Recidivism Among Federal Offenders." In this report, the Commission concluded that the risk of recidivism is tied directly to age, race, level of education, and length of sentence. The data relied upon by the Commission establishes that the risk of recidivism declines steadily with age; the higher the level of education, the lower the risk of recidivism; the shorter the sentence, the lower the risk of recidivism. All of the factors relied upon by the Commission are also present here. Based upon all of the facts at this Court's disposal, it is clear that there is no need to protect the public from any future crimes of Scott Brettschneider. He is 63 years of age, in poor health, and is effectively prevented from practicing law. The risk of recidivism is extremely low, and thus, there is no need for a custodial sentence to protect the public.

The Court should also consider the First Step Act of 2018, which amended 18 U.S.C. § 3624(c)(2) to state "[t]he Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph." Mr. Brettschneider is such a low-risk individual contemplated by this statute.

**4. The Suggested Sentence is Sufficient in This Instance to Afford Adequate Deterrence to Criminal Conduct.**

Mr. Brettschneider has certainly been affected by his arrest and never wants to go through this process again. Nor will he, his life history proves that he is not a person prone to criminal conduct. He will stand before this Court on the day of sentence a very humbled, scared and nervous man as this Court holds not only his future in it's hand but the future and well being of his loving wife and beloved daughter. If this Court decides that the suggested sentence is just and deserved in this matter Mr. Brettschneider' reaction will most assuredly not be "oh I got away with one, I can do it again." To the contrary, Mr. Brettschneider' reaction will be overwhelming gratitude to this Court and that he never wants to be in the position of risking everything again. Mr. Brettschneider most respectfully does not need an extended prison sentence to teach him a lesson.

Above I have described the facts relative to specific deterrence. However, §3553 (a) requires however a sentencing Court to consider not only specific deterrence but also general deterrence. Here the experts have conducted many studies and they have routinely found that there is **no** empirical relationship between sentence length and specific or general deterrence. In all categories of crime from white collar to drug offenses, from violent crimes to larcenies severe sentences have proven not to deter crime. The studies have shown however that lengthy sentences

Honorable Carol B. Amon
July 12, 2019
Page 17 of 24

do increase the rate of recidivism.  See, Lynne M. Vieraltis et. al., *The Criminogenic Effects of Imprisonment: Evidence from State Panel Data 1974-2002,* 6 Criminology & Pub.  Pol'y 589, 591-93 (2007), U.S. Sent'g Comm'n Staff Discussion Paper, *Sentencing Options under the Guidelines* 18-19 (Nov.1996), available at http://www.ussc.gov/SIMPLE/sentopt.htm, Miles D. Harer, *Do Guideline Sentences for Low Risk Drug Traffickers Achieve Their Stated Purposes?,* 7 Fed. Sent. Rep 22 (1994).  General deterrence has been heavily criticized for relying on publicity of heavy punishments; it has been described as "the least effective and least fair principle of sentencing."  Martin, Jacqueline (2005). The English Legal System (4th ed.), p. 176. London: Hodder Arnold. ISBN 0-340-89991-3.

Indeed, while many believe that the higher the sentence, the greater the effect in deterring others, the scientific research shows no relationship between sentence length and deterrence.  The general research finding is that "deterrence works," in the sense that there is less crime with a criminal justice system than there would be without one.  But the question for this Court is "marginal deterrence," *i.e.*, whether any particular quantum of punishment results in increased deterrence and thus decreased crime.  Here the findings are uniformly negative: there is no evidence that increases in sentence length reduces crime through deterrence. Current empirical research on general deterrence shows that while **certainty** of punishment has a deterrent effect, "increases in severity of punishments **do not** yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence." Michael Tonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006).  Thus, the clamoring by those outside of the criminal justice system for harsher and harsher sentences has no basis in scientific fact.

The fact that "general deterrence" is not considered by people considering committing crimes is best demonstrated by the studies of white-collar crimes.  For purposes of argument it can be rationally presumed that the white-collar criminal is the most rational of criminal offenders.  That if any criminal offenders were going to consider all of the pluses and minuses of committing a criminal act, a white collar criminal would be most likely to indulge in that type of thinking.  However, the studies show that there is no difference in the deterrence factor between probation and imprisonment for white-collar offenders. That is, offenders given terms of probation were no more or less likely to reoffend than those given prison sentences.  See, David Weisburd et.al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes,* 33 Criminology 587 (1995).

This has proven to be true even in narcotics cases. In a recent study of drug offenders sentenced in the District of Columbia, researchers tracked over a thousand offenders whose sentences varied substantially in terms of prison and

probation time.  Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, _ Criminology ___ (2009).  The results showed that variations in prison and probation time "have no detectable effect on rates of re-arrest."  "Those assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame."  In other words, "at least among those facing drug-related charges, incarceration and supervision seem not to deter subsequent criminal behavior." Id.

The reason for this is that potential criminals are not generally aware of penalties for their prospective crimes, do not believe they will be apprehended and convicted, and simply do not consider sentence consequences in the way one might expect of rational decision makers. Tonry, *Purposes and Functions of Sentencing*, *supra*, at 28-29.  A recent review of this issue concluded: "There is generally no significant association between perceptions of punishment levels and actual levels . . . implying that increases in punishment levels do not routinely reduce crime through general deterrence mechanisms." Gary Kleck, et al, *The Missing Link in General Deterrence Theory*, 43 Criminology 623 (2005).

The Commission itself has found that "[t]here is no correlation between recidivism and guidelines' offense level. Whether an offender has a low or high guideline offense level, recidivism rates are similar.  While surprising at first glance, this finding should be expected.  The Guidelines' offense level is not intended or designed to predict recidivism."  See USSC, Measuring Recidivism at http://www.ussc.gov/publicat/Recidivism_General.pdf.  State law enforcement officials at a past hearing on this subject confirmed the research results.  The late Chief of the Miami Police Department, John Timoney testified that the deterrent effect of the federal system is not its high sentences but the certainty that there will be punishment.

The Courts have also taken into consideration the lack of effect of "general deterrence".  In United States v. Beiermann, 599 F. Supp. 2d 1087, 1103-04 (N.D. Iowa 2009) the Sentencing Court after reviewing empirical evidence regarding the continuing increase in the number of drug and child pornography offenders despite the war on each and stiff federal sentences, concluded that "there is not a sliver of evidence in this sentencing record remotely supporting the notion that harsher punishment would reduce the flow of child pornography on the Internet. . . . This does not mean that [the defendant] should not receive a lengthy sentence for his criminal conduct, but it does mean that the sentence should not be longer simply to satisfy an objective that, while laudable, is not being achieved according to any empirical or other evidence in this case or, for that matter, empirical evidence in any other case or source that I am aware of."

Honorable Carol B. Amon
July 12, 2019
Page 19 of 24

The argument could be made that attorneys especially criminal defense attorneys are in a different class because they are more aware of how the justice system works. However, the same arguments outlined above would be in effect. No attorney commits a crime thinking he or she is going to get caught. If they did they never would commit the crime. Again the presence of a criminal justice system is the deterrent not the fact of what sentence they might receive. If this Court were to give Mr. Brettschneider the respectful request of a non jail sentence due to all of the factors in this case and this sentence became well known in the criminal defense field anyone would be hard pressed to argue that this would cause even one attorney to consider criminal conduct. First of all Mr. Brettschneider's situation is quite unique ██████████████████████████████████████████████████████████████████████████████████████████████████████ and this would certainly deter any attorney who was giving his action reasonable thought. The truth is however that most attorneys who commit crimes are not thinking rationally and are driven to commit their crimes by some overwhelming outside influence such as addiction, financial crisis or just plain greed among many other reasons. These attorneys would not take the Court's sentence into consideration at all. Thus, for this Court to sentence Mr. Brettschneider would go beyond the mandates of <u>Kimbrough v. United States</u>, 128 S.Ct 558, 571, 169 L.Ed 481 (2007) "to impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing,"

**5. The Suggested Sentence is Sufficient in This Instance to Protect the Public From Further Crimes by Mr. Brettschneider.**

No argument can be made that Mr. Brettschneider poses a threat to public safety under the present conditions. Mr. Brettschneider's family situation, the respect he commands from friends and family members, and his position in his community make it unlikely that he will commit another offense in the future. Mr. Brettschneider is well-liked and respected by numerous friends and family members, as evidenced by the attached letters of recommendation, collectively appended hereto. See, Exhibit D.

As detailed <u>passim</u>, the defense relies upon the testaments to Mr. Brettschneider's character and the relationships he has had with his family. Further, for the reasons set forth, there is little chance Mr. Brettschneider will re-offend in the future.

**6. The Suggested Sentence is Sufficient in This Instance to Provide Mr. Brettschneider With Needed Rehabilitative or Other Treatment.**

Mr. Brettschneider is of course willing to participate in any programs the Court or Probation may deem necessary for him in the future.

Honorable Carol B. Amon
July 12, 2019
Page 20 of 24

**7. The Suggested Sentence In This Matter Would Not Present The Court With Unwarranted Disparities In Sentencing.**

As the Guidelines indicate the suggested sentence is well within the recommended Guideline sentence.  The Policy Statement of the United States Sentencing Guidelines states that the reason that the Guidelines exist is to eliminate, as much as possible, the "the wide disparity in sentences imposed for similar criminal offenses committed by similar offenders."  This principle is codified at 18 U.S.C. § 3553(a)(6).  See United States v. Savin, 349 F.3d 27, 34 (2d Cir. 2003), United States v. Hayes, 762 F.3d 1300 (11th Cir. 2014), Chapman v. United States, 500 U.S. 453 (1991) (Stevens, J, dissenting), Blakely v. Washington, 542 U.S. 296 (2004).

It goes without saying that the Guidelines are structured so that a person with a criminal history will generally receive greater punishment for the same offense than that of a person without a criminal history; the Guidelines are further structured so that the more culpable defendant will receive greater punishment than the less culpable co-defendants.  As noted by the PSR, the sentences imposed by this Court for the co-defendants in this case are as follows:

        a.  **Reginald Shabazz-Muhammad** – 2 years probation and $1000.00 fine

        b.  **Richard Marshall** – 3 years probation and $1500.00 fine

        c.  **Charles Gallman** – 6 months incarceration as to Count # 1, and 30 months consecutive on Count # 3

It must be noted that Count # 3 of the Superseding Indictment concerns conduct with another defendant, John A. Scarpa, Jr., to bribe a witness in a double-homicide trial in Suffolk County.  None of the allegations set forth in Count # 3 involved Scott Brettschneider, Reginald Shabazz-Muhammad, or Richard Marshall.  Additionally, Gallman received a concurrent 1 ½-3 year sentence in the Queens County Supreme Court for the same conduct involving Count # 3, resulting in no further jail time.

As the Government noted in their sentencing submissions as to all three co-defendants, those three men, unlike Scott Brettschneider, had extensive and serious criminal histories involving felony convictions.  Further, as to Gallman, the Government posited in their sentencing submission that "Gallman spent much of his life committing violent crimes for which he has consistently received lenient sentences....Gallman has committed crimes for decades, with few breaks, and has shown no appetite for a law-abiding life."  (Docket # 147, PageID # 1110, 1119).  This Court still imposed a Guidelines-range sentence as to Count # 1.

Honorable Carol B. Amon
July 12, 2019
Page 21 of 24

In contrast, the Government did not seek custodial sentences for either Richard Marshall or Reginald Shabazz-Muhammad, recognizing that their criminal histories paled in comparison to Gallman. Fairness dictates that this Court should impose the same non-custodial sentence for Scott Brettschneider as meted out to two of the co-defendants, to whom Mr. Brettschneider is more closely similarly-situated to than to Gallman.

The suggested sentence would also not be disparate with sentences on a national scale either as it is within the Guidelines parameters. Evidence of this can be derived from the Supreme Court of the United States itself. See, Gall v. United States, 552 U.S. 38 (2007). In Gall the Supreme Court noted:

> a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. Id. at 54

This Court most respectfully should also consider the aberrant behavior departure under § 5K2.20 of the Sentencing Guidelines. Under Second Circuit law, a defendant's crimes need not have been committed "spontaneous[ly] and seemingly thoughtless[ly]." United States v. Gonzalez, 281 F.3d 38, 47 (2d Cir. 2002). It would suffice if they were a "single criminal occurrence or single criminal transaction," were committed "without significant planning," were of a "limited duration," and constituted "a marked deviation from an otherwise law-abiding life." United States v. Castellanos, 355 F.3d 56, 58 (2d Cir. 2003) (citing U.S.S.G. § 5K2.20). Here this was in fact a one time act of limited duration and certainly marked a deviation from an otherwise law abiding life. And under the Guidelines Application Notes, the sentencing court can consider the following characteristics of a defendant: "(A) mental and emotional conditions; (B) employment record; (C) record of prior good works; (D) motivation for committing the offense; and (E) efforts to mitigate the effects of the offense." Guideline § 5K2.20, n. 3. As demonstrated above, the various factors militate in favor of a finding that this was aberrant behavior. It should be noted that Mr. Brettschneider received no financial or other pecuniary incentive for his participation in the offense conduct. Additionally, as a result of this arrest, he has been effectively sidelined from the practice of law. Thus, the circumstances that gave rise to the instant offense are extremely unlikely to recur.

If prior performance is any indication of future success, then it should be clear that Scott Brettschneider is a perfect candidate for a sentence of probation. By the time sentencing occurs, Scott Brettschneider will have been subject to supervision by the Department of Probation for over 16 months. In that time, he has faithfully honored all obligations imposed upon him by the Court and Probation. As noted above, he

Honorable Carol B. Amon
July 12, 2019
Page 22 of 24

also has a higher motivation to avoid a violation of supervision and the resultant prison sentence for the benefit of his wife and daughter.

In a speech given at the 2003 American Bar Association Annual Meeting, former Supreme Court Justice Anthony Kennedy delivered the keynote address challenging the legal profession and the ABA to begin a new public discussion about American sentencing and corrections policies and practices.   In discussing the problems plaguing our present criminal justice system, he stated:

> *Our resources are misspent, our punishments too severe,*
> *our sentences too long.*

Justice Kennedy also stated candidly that **"*every day in prison is much longer than most any day you have ever spent.*"**   In response to Justice Kennedy's comments, the Justice Kennedy Commission was formed in 2004, which set forth the following recommendations in their report to the United States House of Representatives:

    - Lengthy periods of incarceration should be reserved for offenders who pose the greatest danger to the community and who commit the most serious offenses

    - Alternatives to incarceration should be provided when offenders pose a minimal risk to the community and appear likely to benefit from rehabilitation efforts

Here, Mr. Brettschneider is not a danger to the public, he has committed no violent acts, he has no criminal record and he is no threat to commit any crimes in the future.

Although public safety is a major public concern, the public also believes in rehabilitation.  In a recent nationwide survey conducted by the National Center for State Courts, almost 80% of 1,502 people surveyed believed that under the right conditions, many offenders can turn their lives around and become productive, law-abiding citizens.  88% believe that rehabilitation and treatment programs should often be used as alternatives to prison.  77% said that they prefer their tax dollars be spent on programs to help offenders find jobs or obtain treatment rather than on building more prisons.  Those surveyed also favored a balanced approach to public safety, "one that is tough, especially on the most violent, dangerous or threatening offenders, but one that also encourages less serious offenders to turn their lives around." According the Pre-Sentencing Report, it would be substantially more expensive to keep the Defendant incarcerated than supervised by the probation office.

Sentencing reform has tried to implement into practice a basic penological theory that comports with American Constitutional ideals of due process of law and equal

Honorable Carol B. Amon
July 12, 2019
Page 23 of 24

protection of the law – that the punishment should fit the crime and the individual. The United States Supreme Court recognized this principle that "prevalent modern philosophy of penology that the punishment should fit the offender and not merely the crime. The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender." Williams v. New York, 337 U.S. 241, 248 (1949). The New York State Supreme Court, Appellate Division, First Department has put this succinctly:

> Basically, the primary object of our penal philosophy must be the protection and security of our community. For reasons of simple safety, the habitual criminal with his anti-social orientation and the incorrigible thug who resorts to violence to achieve his criminal designs must be uprooted and separated from the community. As a consequence, not only is protection afforded society but, rightly or wrongly, the law assumes that prompt and substantial punishment in such cases will deter others similarly inclined.

> However, all offenders are not habitual criminals. Great care should therefore be exercised in imposing judgment for the very obvious reason that vast differences exist among individual offenders and their personal capacity for rehabilitation.

> The prime aim of socialized justice, and inherent in its administration in our criminal courts today, is a dispassionate and conscientious evaluation of the unique aspects of the convicted offender's total personality, his intelligence, his character structure, his demonstrated ability to conform, his capacity to accept our social disciplines and limits, and his over-all stability. Such an inventory of his assets and liabilities is indispensable to a judicial determination in selected cases of whether accidental or situational offenders with promising potential can be aided to readjust to a normal life in the community without the disruptive, and sometimes destructive, effects of imprisonment.

> In sum, a sentence must not only encompass the community's condemnation of the defendant's misconduct, but must also evaluate the possibilities of the rehabilitation of the defendant as a useful and responsible member of the community. The point need

Honorable Carol B. Amon
July 12, 2019
Page 24 of 24

> not be labored that it is, generally, the community's gain
> whenever a family can be kept together as an integrated
> and emotionally satisfying unit, with the head of the
> family meeting his responsibilities to it instead of
> unnecessarily marking time in jail.

People v. Silver, 10 A.D.2d 274, 275-277, 199 N.Y.S.2d 254 (App. Div. 1st Dept. 1960). Here, when Mr. Brettschneider's life in totality is considered along with the crimes he is convicted of it is respectfully requested that this Court furnish a sentence that is non incarceratory.

The object of this letter and all the attachments is to give this Court the proper background so it can arrive at a just sentence that would meet the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," as stated in Kimbrough v. United States, 128 S.Ct 558, 571, 169 L.Ed 481 (2007). This quote is euphemistically referred to as the "parsimony clause," it is in reality a manner of codifying the constitutional doctrine of the least restrictive alternative. "Parsimony in the use of punishment is favored. The sentence imposed should therefore be the least severe sanction necessary to achieve the purposes for which it is imposed ..." See, American Bar Association, Standards For Criminal Justice, Chapter 18, "Sentencing Alternatives and Procedures", 18-3.2(a)(iii) (1993). It is also a manner of codifying the age-old adage that a just sentence is one that not only takes into consideration punishment but also mercy. It is the defendant's position that after considering this and all of the relevant factors of Mr. Brettschneider's situation, the law as it is today and the empirical studies done in this area that a sentence that includes a non-jail alternative would be reasonable herein.

Thank you very much for your consideration of this matter.

Most Respectfully,

Patrick Joyce, Esq.

cc.: Andrey Spektor, AUSA
    Lindsay K. Gerdes, AUSA
    Keith Daniel Edelman, AUSA
    Margaret Gandy, AUSA