# PATRICK J. JOYCE, ESQ.
Attorney at Law
70 Lafayette Street - 2nd Floor
New York, New York 10013
(212) 285-2299
FAX (212) 513-1989

New Jersey Office:
658 Ridgewood Road
Maplewood, NJ 07040
(973) 324-2711

September 13, 2019

**BY HAND**
Honorable Carol B. Amon
United States District Court Judge
United States Courthouse
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Scott Brettschneider,
    18 CR 123 (CBA)

Dear Judge Amon,

      The Defendant writes further to his letter of August 21, 2019, which requested a stay of that portion of the Defendant's sentence, which requires him to travel to Brooklyn, New York to serve the Community Confinement aspect of his probationary sentence. The defendant now asks the court to continue this stay until that time when Probation can find a Community Confinement Center, which is located within 150 miles of his residence or in the alternative schedule a conference so that this issue can be discussed in greater detail.

      As the court is aware, the defendant currently resides in ▮▮▮▮▮, North Carolina. He had reported to a pre-trial officer in the Western District of North Carolina since March of 2018 and he was originally assigned a Probation Officer in that District immediately following his sentence. Mr. Brettschneider is to be supervised by the Probation Department for four (4) years.

      As a condition of that Probation, the Court ordered Mr. Brettschneider to serve 60 days in a Community Confinement Center (CCC) which was to be located in his home state of North Carolina. It was ordered by the court that Mr. Brettschneider be permitted to leave the CCC on Friday mornings at 9:00 AM and return to the CCC on Monday morning at 10:00 AM. The court stated that the rationale for his intermittent release was so that Mr. Brettschneider could care for his daughter, while his wife worked weekend shifts as a hospice registered nurse.

      On August 21, 2019, the Probation Department in the Eastern District of New York requested that the court amend the original judgment to exclude the language that Mr. Brettschneider must be housed at a CCC in the State of North Carolina. This request came as

a result of a report from the Probation Department in the District of North Carolina that at present there are no beds available at the CCC used by that District. On August 22, 2019 the court granted this request. The amended order does not specify a location for placement, but rather tasks the Probation Department with finding an appropriate placement. Probation has identified Gold Street, in Brooklyn, New York as an appropriate location for Mr. Brettschneider to serve his Community Confinement. The Court has subsequently ordered that Mr. Brettschneider's Community confinement is to begin on September 23, 2019.

This new Order by the Court most respectfully does not allow for the Court's initial goals to be met. At the initial sentencing of the defendant, the Court issued a probationary sentence. The Court quite mercifully took into consideration the severe medical issues of Mr. Brettschneider's daughter and the fragile circumstances that Mr. Brettschneider's family lives under. The Court stated that Mr. Brettschneider "has been a faithful and dedicated father to his daughter and it is for this reason that I tried to fashion a sentence that appropriately recognized the gravity of his conduct yet will allow him to continue to participate in some way in the care of his daughter." The ultimate goal was for Mr. Brettschneider to serve his probationary sentence, while at the same time continuing to care for his daughter during the working hours of his wife Nancy, who is now the sole financial provider for the family. As you are already aware, Mrs. Brettschneider works as a nurse, where her schedule is every Friday, Saturday and Sunday (12 hours per day, not including travel time). Her position entails travel to multiple hospitals and she is often expected to travel 120 miles during her day. At times this leaves her away from the home for 15 hours a day. ▆▆▆ (his daughter) is in the care of Mr. Brettschneider for several hours a day if caregivers show up for work, or often the whole day if they do not show up. Due to ▆▆▆ severe immune deficiency (requiring 5 hour transfusions every 3 weeks), if a caregiver is ill, they are not permitted to come into the home. More often than not, flu season brings weeks at a time where there is no help to care for ▆▆▆. In the past when there were two incomes, the Brettschneider's were able to privately supplement help for ▆▆▆. In the event that one parent is ill, the other usually takes over as not to expose ▆▆▆. There are no longer funds to do this. In actuality, the family is on the verge of losing their home. If Nancy's job is affected and she loses her job, this will have a further devastating effect on their daughter.

This is why sending Mr. Brettschneider to Brooklyn every week as an alternative to the overcrowded conditions in North Carolina[1] would be catastrophic for this family and the defendant pleads with the Court to allow the Probation Department to arrive at a suitable solution to the problem that will satisfy the Court. In the sentencing minutes, the Court stated that the community confinement "should be one in North Carolina" and in addition that the Court had "spoken at length about my sentence with Mark Gjelaj who is here and Mr. Turton and they assure me that they can work out the details of a community confinement center in North

---

[1] Mr. Brettschneider is on probation for four years, it is inconceivable that at some point during that four year period that a bed would not be available in a local CCC thus, giving Mr. Brettschneider the ability to serve his 60 days of Community confinement as originally ordered by the Court. Mr. Brettschneider is not adverse to meeting the Court's sentencing requirements he would just respectfully request that he be allowed to do it under the original Order.

Carolina." Unfortunately it seems that these details were not worked out, and now Mr. Brettschneider is the recipient of a drastic altering of his sentence and judgment that will have severe effects on his family and potentially his wife's ability to maintain her employment.

After sentencing and upon Mr. Brettschneider's return to North Carolina, he contacted probation and immediately tried to work with them to find placement. They have even looked 2-3 hours away from Charlotte where this would allow the defendant to drive back and forth. There are several facilities, which offer community confinement throughout the south, all which would permit Mr. Brettschneider to be able to be in his home Friday morning until early Monday morning. The court could also substitute Community Confinement with up to One (1) year of home monitoring with geo-location monitoring. Both of these options restrict Mr. Brettschneider's freedom significantly, while still permitting him to take care of his daughter when his wife is working.

As previously stated the Court's original rationale for imposing a sentence whereby the defendant could return home to help care for his daughter is completely negated by this newer order for many reasons.

(1) As the Court's order presently stands Mr. Brettschneider would be released from custody in Brooklyn at 9:00AM Friday morning. Let's assume that Mr. Brettschneider is released on time and has no traffic arriving at La Guardia airport, the first flight he could possibly make is a 1:00PM flight that is scheduled to arrive at 3:09PM, which means he is walking into his house after 4:00PM. Thus, it would be impossible for his wife to work on Friday unless they pay for care for his daughter (funds they do not have) and even this is not a tenable solution because what if the care giver doesn't show or is unable to work because she or he has a cold or some other illness or emergency.

(2) Furthermore, as the Court Order is presently written Mr. Brettschneider is due to be at the Brooklyn CCC at 10:00AM Monday morning. This would entail taking a flight from his home in North Carolina on Sunday evening, which would necessitate leaving his home sometime late Sunday afternoon again not allowing his wife to work her Sunday shift. Thus, due to the travel time needed for Mr. Brettschneider to meet the Court's Order it would totally negate the objective the Court espoused at the sentencing of this matter.

(3) Travel problems aside there is also the cost issue. The Court's new Order will cost the Mr. Brettschneider over $500.00 a week at a minimum, this is money he does not have at this point in time. Mr. Brettschneider has exhausted all of his savings at this point and his wife has taken out various loans and exhausted her savings. The family at this point is in great fear of losing their home, which would obviously have grave consequences mostly to the care of his daughter. An increase of expenses of over $2000.00 per month would make it very difficult for them to pay their monthly bills.

(4) An additional problem relates to Mr. Brettschneider's own health situation. We have been in contact with the Center on Gold Street and they have informed us that they will not pre-screen Mr. Brettschneider's medicines that he needs to take each and every day (over

14 prescribed medications) and cannot guarantee that they will have adequate supply of the medicines on sight when he arrives. Any delay in Mr. Brettschneider taking his medications could have catastrophic ramifications. And, if any emergencies do occur he will be hundreds of miles from his regular physicians thus compromising the situation even further.

 As an example of the tenuous state of Mr. Brettschneider's health just this past Monday it was determined that Mr. Brettschneider is showing signs of acute kidney failure more than likely due to the chemotherapy he is on to care for his leukemia combined with the effects of the diuretics he takes for heart failure. The doctors are presently in the process of adjusting his prescriptions to deal with this latest news but if this situation occurred while he was away at the CCC in Brooklyn catastrophic results could certainly become a reality. Mr. Brettschneider blood work is currently being closely monitored so that correct adjustments can be made. This could not happen if the Court's current Order is put into effect.

 The defendant is very grateful to the Court for the care it demonstrated to him and his family at the sentencing of this matter and in granting the 30-day stay. However, as stated above the Court's modification would severely impact Mr. Brettschneider's ability to be a caregiver for his daughter, which would severely impact his daughter's health and living situation. In addition the cost of flying back and forth from North Carolina each week plus, the night's lodging on Sunday night, is well beyond the family's capacity at this time and would cause them severe financial hardship increasing the chances that they would lose their home. And, finally and of least importance to Mr. Brettschneider but obviously important to his wife and daughter Mr. Brettschneider's own health situation could be critically compromised. Thus, the defendant most respectfully requests that the Court issue a new Order returning the authority to find a place for Mr. Brettschneider to serve his sentence to the Probation Department in North Carolina. We ask that you consider this modification to keep Mr. Brettschneider's family intact and allow the Probation Department time to meet the goal of the sentence the Court originally outlined. If the court is disinclined to grant this motion, we respectfully request that we be permitted to address the Court in person on this issue.

 Thank you very much for your consideration of this matter.

Most Respectfully,<br>
Patrick Joyce

Cc: AUSA Spektor via Email
  Probation Officer Lori Jones via Email